**WASTE MANAGEMENT OF MICHIGAN, Plaintiff,**

. v.

**INGHAM COUNTY, et al., Defendants.**

No. 5:94–CV–94.

United States District Court, W.D. Michigan, Southern Division.

July 29, 1996.

David H. Fink, Cooper, Fink & Zausmer, P.C., Farmington Hills, MI, David A. Domzal, Waste Mgmt. of North America, Inc., Livonia, MI, for plaintiff.

John R. Fifarek, Reid & Reid, Mark A. Latterman, Latterman & Assoc., P.C., David N. Morrell, Jr., Cohl, Stoker & Toskey, P.C., Sharon H. Whitmer, James E. Riley, Asst. Attorney Generals, Lansing, MI, for defendants.

## OPINION

McKEAGUE, District Judge.

This case presents the questions of whether § 13 [1] and § 38(6) [2] of Part 115 of the Natural Resources and Environmental Protection Act (the "intercounty waste transportation restrictions"), M.C.L. § 324.11513 and M.C.L. § 324.11538(6), and provisions in the Ingham County Solid Waste Management Plan (the "Ingham County Plan") restricting transportation of solid waste can withstand Commerce Clause scrutiny. For the reasons discussed below, the Court finds that the intercounty waste transportation restrictions and the Ingham County Plan provisions survive scrutiny under the Commerce Clause because they do not discriminate against interstate commerce on their face or in practical effect, and any burden they impose upon

---

**1.** Section 13 was formerly § 13a of the Michigan Solid Waste Management Act ("SWMA"), M.C.L. § 299.413a. The SWMA was recodified in 1994 as Part 115 of the Natural Resources and Environmental Protection Act, M.C.L. § 324.11501 *et seq.*

**2.** Section 38(6) was formerly § 30(2) of the SWMA, M.C.L. § 299.430(2).

interstate commerce is not clearly excessive in relation to the local benefits.

## I. FACTUAL BACKGROUND

Plaintiff Waste Management of Michigan, d/b/a Waste Management of Michigan Midwest ("Waste Management"), is a Michigan corporation currently doing business in several counties within the State of Michigan. Defendant Ingham County is a municipality organized under the constitution and laws of the State of Michigan. Defendant Granger Land Development Company ("Granger") is a Michigan corporation doing business in Clinton and Ingham Counties. Defendant Frank J. Kelley is the Attorney General of the State of Michigan. Granger and the Attorney General are participating in this action as intervening parties.

The State of Michigan enacted its Solid Waste Management Act ("SWMA") in 1978. The SWMA originally required each county to adopt and periodically update a plan providing for the disposal of solid waste [3] generated in the county for a 20–year period, but has been amended to require county plans to address a ten-year period. See M.C.L. §§ 299.425 and 324.11533(1). The Michigan Legislature amended the SWMA in 1988, adopting two provisions [4] requiring county plans to identify other counties to which the county may send or receive solid waste. These amendments provide:

A person shall not accept for disposal solid waste or municipal solid waste incinerator ash that is not generated in the county in which the disposal area is located unless the acceptance of solid waste or municipal solid waste incinerator ash that is not generated in the county is explicitly authorized

in the approved county solid waste management plan. M.C.L. § 299.413a.

In order for a disposal area to serve the disposal needs of another county, state, or country, the service, including the disposal of municipal solid waste incinerator ash, must be explicitly authorized in the approved solid waste management plan of the receiving county. With regard to intercounty service within Michigan, the service must also be explicitly authorized in the exporting county's solid waste management plan. M.C.L. § 299.430(2).

1988 Mich.P.A. No. 475, § 1, codified as amended, M.C.L. §§ 299.413a, 299.430(2).

Ingham County promulgated and adopted the original Ingham County Solid Waste Management Plan (the "Ingham County Plan" or "Plan") in 1983. In May 1990, the Ingham County Plan was updated, and the Michigan Department of Natural Resources approved this update on October 3, 1990. The Plan has not been amended or updated since that time. The articulated purpose of the Plan is "to provide [a] set of actions for the recovery and disposal of solid waste in a manner which will protect the public health and environment...." Plan, at p. ix. In a section entitled "Intercounty Transportation of Waste," the Plan provides:

Act 641 requires that the intercounty flow of waste be explicitly recognized in both the exporting and importing counties' solid waste management plans.

Waste from Clinton, Eaton, and Ingham Counties is disposed of within Ingham and Clinton Counties. The Clinton County Solid Waste Plan recognizes this waste flow, and allows for the continued importa-

---

**3.** Solid waste is defined as "garbage, rubbish, ashes, incinerator ash, incinerator residue, street cleanings, municipal and industrial sludges, solid commercial and solid industrial waste, and animal waste other than organic waste generated in the production of livestock and poultry. Solid waste does not include the following: (a) Human body waste. (b) Organic waste generated in the production of livestock and poultry. (c) Liquid waste. (d) Ferrous or nonferrous scrap directed to a scrap metal processor or to a reuser of ferrous or nonferrous products. (e) Slag or slag products directed to a slag processor or to a reuser of slag or slag produces. (f) Sludges and

ashes managed as recycled or nondetrimental materials appropriate for agricultural or silvicultural use pursuant to a plan approved by the director. (g) Materials approved for emergency disposal by the director. (h) Source separated materials. (i) Site separated materials. (j) Fly ash or any other ash produced from the combustion of coal, when used in the following instances ... (k) Other wastes regulated by statute." M.C.L. § 299.407(7).

**4.** These are the intercounty waste transportation restrictions.

tion of waste from Eaton and Ingham Counties for the next 15 years.

The Ingham County Solid Waste Management Plan recognizes the importation of waste from Eaton and Clinton Counties, and allows for the continued importation for the next seven years (remaining capacity of the portion of the Granger Wood Street landfill within Ingham County).

Plan, at p. VI–6.

The Ingham County Plan authorizes the following facilities[5] to serve the disposal needs of Ingham County: (1) Granger Land Development Company, Watertown Township, Clinton County, Michigan Facility; (2) Granger Waste Management Company, Wood Street, City of Lansing, Ingham County, Michigan Facility; (3) North Lansing Fill No. 2 located in Ingham County, Michigan; (4) Daggett Sand and Gravel located in Ingham County, Michigan; (5) C & C Landfill located in Calhoun County, Michigan; (6) Livingston County Landfill; (7) Jackson County Sanitary Landfill; (8) Ingham County Transfer Station, Williamston, Michigan; and (9) Meridian Township Transfer Station, Haslett, Michigan. Plan, at pp. II–I–II–8.[6] The Plan is silent on the issues of the disposal of Ingham County waste at out-of-state facilities and the import of out-of-state waste into Ingham County.

Waste Management owns and operates the Venice Park Recycling and Disposal Facility in Shiawassee County, Michigan, and the Evergreen Recycling and Disposal Facility near Toledo, Ohio. In addition, Waste Management owns and operates a transfer station in the town of Williamston in Ingham County. From 1988, when it began collecting solid waste in Ingham County, until March of 1993, Waste Management disposed of some of Ingham County's solid waste at one or both of Granger's landfills. From April 15,

1993 until July 1, 1994, Waste Management hauled some Ingham County waste to its Evergreen facility located outside Toledo, Ohio. From March 1995, through November of 1995, Waste Management transported most of its Ingham County solid waste to its Venice Park landfill located in Shiawassee County.

In correspondence dated June 3, 1994, Waste Management informed Ingham County that it was considering some alternative options for shipment of Ingham County waste because of financial considerations. These options included: (1) transfer of Ingham County solid waste to the Waste Management transfer stations in Ionia and Ingham County for disposal at an out-of-state facility; (2) disposal of Ingham County waste at the Kent County incinerator, subject to negotiation of a favorable disposal rate with Kent County; and (3) processing Ingham County solid waste at the Venice Park landfill in Shiawassee County and removing and disposing of recyclables at an out-of-state facility.

In response, Ingham County indicated that each of the proposed options would violate the Ingham County Plan and that an amendment to the Ingham County Plan would be required before Waste Management could proceed under any of the options. In a second correspondence dated July 25, 1994, Waste Management informed Ingham County that it was disposing of some Ingham County solid waste at the Venice Park landfill in Shiawassee County. The correspondence also indicated that Waste Management was processing some solid waste recyclables at its Recycle America Facility located in Grand Rapids, and then shipping these recyclables to various markets, including out-of-state markets. On August 1, 1994, Ingham County demanded that Waste Manage-

---

**5.** There appears to be some dispute between the parties concerning whether Ingham County waste may be disposed of in Shiawassee County. This issue is not properly before the Court and its resolution is not necessary to the Court's consideration of the other issues now before the Court. The Court notes, however, that ¶ 32 of Waste Management's complaint provides: "The disposal of Ingham County solid waste at the Venice Park Facility [which is located in Shiawassee County] is not authorized by the Ingham County Plan."

**6.** North Lansing Landfill No. 2 and Dagget Sand & Gravel are Type III landfills, which are designed to receive inert materials. The Granger facilities, the Livingston and Jackson County Landfills and the C & C Landfill are Type II landfills designed to receive garbage and solid waste.

ment "cease and desist" hauling Ingham County solid waste to the Venice Park landfill. On August 14, 1994, Ingham County demanded for a second time that Waste Management cease and desist hauling Ingham County solid waste to the Venice Park landfill.

Waste Management subsequently commenced this suit, seeking remedies as authorized in 42 U.S.C. § 1983 [7] and a judgment declaring the intercounty waste transportation restrictions and the Ingham County Plan provisions restricting transportation of solid waste unconstitutional and enjoining the defendant from enforcement of either. Waste Management contends that the intercounty waste transportation restrictions are facially unconstitutional, and are unconstitutional as applied because they have interstate economic impacts that violate the Commerce Clause. In addition, Waste Management contends that provisions in the Ingham County Plan that restrict the transportation of solid waste into or out of counties based on the place of origin of the waste violate the Commerce Clause. Defendants contend that Waste Management lacks standing to assert Commerce Clause claims and also seek a judgment finding that the intercounty waste transportation restrictions and the Ingham County Plan do not violate the Commerce Clause and enjoining Waste Management from transporting and disposing of waste generated in Ingham County to Michigan landfills other than those explicitly designated in the Ingham County Solid Waste Management Plan and in the plans of the Michigan counties to which the waste is to be exported. The parties have submitted briefs in lieu of trial, and a hearing was conducted on February 12, 1996, after which the parties submitted supplemental briefing. The Court has reviewed the original and supplemental briefs and has considered the arguments offered at the hearing. The Court now considers this matter ripe for decision.

## II. STANDING

■ As a threshold matter, defendants assert that Waste Management lacks standing to bring a claim challenging the viability of the intercounty waste transportation restrictions and provisions of the Ingham County Plan under the Commerce Clause of the United States Constitution, U.S. Const., Art. I, § 8, cl. 3. In order to satisfy the requirements for standing, a plaintiff must first show that he has suffered an injury in fact that was caused by the challenged activity and can be redressed by the Court. *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). Waste Management has satisfied this requirement by alleging that it suffers economic injury through enforcement of the intercounty waste transportation restrictions and the Ingham County Plan and asking this Court to redress that injury by declaring the intercounty waste transportation restrictions and the Ingham County Plan unconstitutional and enjoining future enforcement of both.

■ To establish standing in a case challenging legislation under the Commerce Clause, a plaintiff must also show that he falls within the zone of interests sought to be protected by the Commerce Clause. *Clarke v. Securities Industry Ass'n,* 479 U.S. 388, 399, 107 S.Ct. 750, 757, 93 L.Ed.2d 757 (1987). Solid waste disposal is a matter that concerns interstate commerce, and Waste Management transports Ingham County solid waste for disposal. Thus, Waste Management's transportation of solid waste impacts the flow of interstate commerce and is within the "zone of interests" protected by the Commerce Clause. Therefore, Waste Management has standing to assert its claims under the Commerce Clause.

## III. COMMERCE CLAUSE

■ The Commerce Clause provides that Congress "shall have power ... [t]o regulate commerce ... among the several states." U.S. Const., Art. I, § 8, cl. 3. Implicit in the Commerce Clause is a "negative" or "dormant" aspect, which "denies the States the

7. Because the Court finds that the intercounty waste transportation restrictions and the Ingham County Plan survive Commerce Clause scrutiny, Waste Management cannot prevail on its 42 U.S.C. § 1983 claim. Accordingly, the § 1983 claim is dismissed.

power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." *Oregon Waste Systems, Inc. v. Dep't of Environmental Quality of the State of Oregon,* 511 U.S. 93, ——, 114 S.Ct. 1345, 1349, 128 L.Ed.2d 13 (1994) (citing *Wyoming v. Oklahoma,* 502 U.S. 437, 452, 112 S.Ct. 789, 799, 117 L.Ed.2d 1 (1992); *Welton v. Missouri,* 91 U.S. 275, 23 L.Ed. 347 (1876)). In this context, " 'discrimination' simply means different treatment of in-state and out-of-state economic interests that benefit the former and burdens the latter." *Oregon Waste,* 511 U.S. at ——, 114 S.Ct. at 1350. The Supreme Court has held that solid waste is a subject of commercial intercourse and is therefore an article of commerce such that legislation by the states restricting its movement is subject to scrutiny under the dormant Commerce Clause. *City of Philadelphia v. New Jersey,* 437 U.S. 617, 622–23, 98 S.Ct. 2531, 2534–35, 57 L.Ed.2d 475 (1978).

■ Current Supreme Court authority provides a two-step method for analyzing a law that is subject to judicial scrutiny under the dormant Commerce Clause. The first step involves a determination of whether the law discriminates against interstate commerce or merely regulates evenhandedly with only incidental effects upon interstate commerce. *Chemical Waste Management, Inc. v. Hunt,* 504 U.S. 334, 340, 112 S.Ct. 2009, 2013, 119 L.Ed.2d 121 (1992); *Philadelphia,* 437 U.S. at 624, 98 S.Ct. at 2535–36. If a restriction on commerce is found to be discriminatory, it is subject to strict scrutiny and is virtually *per se* invalid.[8] *Chemical Waste,* 504 U.S. at 344, n. 6, 112 S.Ct. at 2015, n. 6; *Philadelphia,* 437 U.S. at 624, 98 S.Ct. at 2535–36. If a regulation is found to be nondiscriminatory, the second step of the analysis becomes operative. This step requires the Court to balance the burden on interstate commerce and the local public interest. *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970).

With this two-step analysis in mind, the Court must first determine whether the challenged statutory provisions and the Ingham County Plan discriminate against interstate commerce by favoring in-state economic interests over their out-of-state counterparts. *Carbone,* 511 U.S. at ——, 114 S.Ct. at 1682. Because Waste Management argues that the intercounty waste transportation restrictions and provisions of the Ingham County Plan discriminate against interstate commerce, Waste Management has the burden of proving such discrimination. *Hughes v. Oklahoma,* 441 U.S. 322, 336, 99 S.Ct. 1727, 1736, 60 L.Ed.2d 250 (1979). If the statutory provisions and the Plan discriminate, they must be declared invalid unless the defendants can establish a legitimate purpose and show that such purpose cannot be accomplished through less discriminatory means. *Oregon Waste,* 511 U.S. at ——, 114 S.Ct. at 1351. If, however, the Court finds that the intercounty waste transportation restrictions and the Plan do not discriminate against interstate commerce, the Court must then reach the second step of the analysis and determine whether the burden imposed on interstate commerce is clearly excessive in relation to the local benefits. *Carbone,* 511 U.S. at ——, 114 S.Ct. at 1682.

## A. Whether the Intercounty Waste Transportation Restrictions and the Ingham County Plan Discriminate Against Intrastate Commerce

■ Waste Management first contends that the intercounty waste transportation restrictions and the Ingham County Plan are *per se* invalid under strict dormant Commerce Clause scrutiny because they facially discriminate against interstate commerce by depriving competing interstate companies of access to the local landfill market for Ingham County waste. Specifically, Waste Management contends that the intercounty waste transportation restrictions, which require that a solid waste management plan expressly allow the transfer of solid waste into and out of a Michigan county, and the corresponding provisions of the Ingham County Plan limiting the disposal of Ingham County

---

8. The central rationale for invalidation of state or municipal regulations that discriminate against interstate commerce is prohibition of laws "whose object is local economic protectionism, laws which would excite those jealousies and retaliatory measures the Constitution was designed to prevent." *Carbone,* 511 U.S. at ——, 114 S.Ct. at 1682.

Waste to specified landfills and prohibiting transportation of Ingham County Waste elsewhere are facially discriminatory and that similar provisions were found unconstitutional by the Supreme Court in *C & A Carbone v. Town of Clarkstown,* 511 U.S. 383, 114 S.Ct. 1677, 128 L.Ed.2d 399 (1994).

In *Carbone,* the Supreme Court struck down Clarkstown's flow control ordinance which required that "all solid waste be processed at a designated transfer station before leaving the municipality." [9] *Carbone,* 511 U.S. at ——, 114 S.Ct. at 1680. Clarkstown's flow control ordinance prevented the disposal of non-recyclable waste at landfills in other states. Thus, the *Carbone* Court held that the prohibition against sending non-recyclable waste to landfills outside of New York discriminated against interstate commerce and therefore violated the dormant Commerce Clause.

Here, the intercounty waste transportation restrictions and the Ingham County Plan do not prevent plaintiff from delivering solid waste to any location outside of Michigan. Instead, the intercounty waste transportation restrictions apply only to the disposal of solid waste generated in Ingham County when that waste will also be disposed of within the state. If plaintiff, or any other solid waste transporter, wants to dispose of solid waste generated in Ingham County at a location outside of Michigan, nothing in the intercounty waste transportation restrictions or the Ingham County Plan prohibits them from doing so. Unlike the *Carbone* ordinance which required *all* waste to be processed at a specified transfer station, the intercounty waste transportation restrictions and the Ingham County Plan require only that waste generated within Ingham County be taken to one of the listed facilities if the waste will be disposed of in-state. Because the intercounty waste transportation restrictions and the provisions in the Ingham County Plan do not prohibit disposal of Ingham County waste outside of Michigan, they are substantially different from the Clarkstown ordinance struck down in *Carbone.*

In addition, the situation presented by the within case is different from that presented in *Carbone* because Clarkstown's ordinance prohibited everyone except the favored local operator from performing the initial waste processing step on waste originating in Clarkstown. The Ingham County Plan provides that Ingham County waste disposed of within the state can be disposed of at a number of different facilities and does not require waste disposal at a particular facility. Thus, the intercounty waste transportation restrictions and the provisions in the Ingham County Plan do not discriminate against interstate commerce by depriving out-of-state businesses of access to the local market.

Waste Management also argues that the intercounty waste transportation restrictions and the Ingham County Plan discriminate against interstate commerce in practical effect because they have the effect of driving up the disposal costs for interstate companies that wish to transport and dispose of Ingham County waste. Waste Management contends that defendant Granger has been able to create a virtual monopoly for itself on solid waste disposal and charges premium rates for disposal at its facilities to subsidize recycling and composting efforts.

Waste Management's argument, however, is largely unsupported by the facts of the case and are substantially undercut by its own concessions. Waste Management's argument is premised on the notion that Ingham County waste may only be taken to Granger facilities, but Waste Management concedes that it may also take Ingham County solid waste to the C & C Landfill, which is not owned by Granger. In addition, Waste Management admits that it uses the C & C Landfill and that it pays a discount rate at that facility. Reply Brief (docket # 58) at p. 9, n. 7. Waste Management also acknowledges that it transported solid waste to one of its own out-of-state facilities. *Id.* at p. 10. Use of the C & C Landfill and out-of-state facilities is permissible under the terms of the intercounty waste transportation restrictions and the Ingham County Plan, and Waste Management candidly admits that it does so. Thus, Waste Management has failed to show that the intercounty waste

---

9. The specified transfer station charged a tipping fee of $81 per ton.

transportation restriction and the Ingham County Plan discriminate against interstate commerce in practical effect by driving up disposal costs and has not shown that the intercounty waste transportation restrictions or the Ingham County Plan evince a protectionist intent such that strict Commerce Clause would apply.

### 1. Whether the Supreme Court Struck Down the Inter–County Waste Transportation Restrictions in Their Entirety

Waste Management next contends that *Ft. Gratiot Sanitary Landfill v. Mich. Dep't of Natural Resources,* 504 U.S. 353, 112 S.Ct. 2019, 119 L.Ed.2d 139 (1992) ("*Ft. Gratiot I*"), compels a determination by this Court that the intercounty waste transportation restrictions are facially unconstitutional because, in that case, the Supreme Court struck down these statutory provisions in their entirety. In *Ft. Gratiot I,* the Supreme Court considered whether M.C.L. §§ 299.413a and 299.430(2),[10] which prohibited private landfill operators from accepting solid waste originating outside of the county in which their facilities were located, discriminated against interstate commerce because the provisions prohibited local landfill operators from accepting waste generated out-of-state and prohibited disposal of waste generated in-state at out-of-state facilities. 504 U.S. at 361. Rejecting the argument that the provisions did not discriminate against interstate commerce "because they treat waste from other Michigan counties no differently from other states," *id.* at 359, the Court focused on the fact that the provisions prohibited acceptance of any waste generated in another county, state or country unless the county plan explicitly authorized its acceptance and found that the provisions were facially discriminatory and therefore subject to strict Commerce Clause scrutiny. Finding that the provisions were *per se* invalid, the Court then considered and rejected the argument that the Solid Waste Management Act is a "comprehensive health and safety regulation rather than 'economic protectionism' of the state's limited landfill capacity."

*Id.* at 363, 112 S.Ct. at 2026. Because the statutory provisions discriminated against interstate commerce and the defendants could not establish a legitimate purpose, the Supreme Court declared the provisions invalid.

After the Supreme Court's decision in *Ft. Gratiot I,* the case was remanded to the Sixth Circuit Court of Appeals. Following some confusion at the Sixth Circuit, the case was remanded to the United States District Court for the Eastern District of Michigan. On remand, the district court determined that *Ft. Gratiot I* was a final judgment in favor of Fort Gratiot and terminated the case. Based upon that determination, the district court denied Fort Gratiot's motion for entry of an order granting it partial summary judgment based on the Supreme Court's ruling in *Ft. Gratiot I.* Fort Gratiot then appealed the district court's decision.

On appeal, the Sixth Circuit reversed and remanded. *Ft. Gratiot Sanitary Landfill, Inc. v. Michigan Dep't of Natural Resources,* 71 F.3d 1197 (6th Cir.1995) ("*Ft. Gratiot II*"). In a published opinion, the Sixth Circuit indicated: "[a]n issue still to be resolved is Fort Gratiot's new request in the district court for an invalidation of the Amendments' [§§ 13 and 38(6)] regulation of intrastate, intercounty waste movement." *Id.* at 1202. The *Ft. Gratiot II* court noted that Fort Gratiot claimed that the Supreme Court's opinion invalidated §§ 13 and 38(6) in their entirety, but that the defendants sought a holding that *Ft. Gratiot I* only declared the ban on interstate transfers of waste unconstitutional, without affecting the intrastate, intercounty regulations. The Sixth Circuit did not resolve this issue but went on to expressly state:

> The resolution of this question [of whether *Ft. Gratiot I* invalidated the regulations in their entirety or only as they relate to banning interstate transfers of waste] is for the district court, which has the task of implementing the Supreme Court's decision in the first instance. It is beyond dispute that the Supreme Court held the Amendments' [§§ 13 and 38(6)] regulation

10. These provisions have been recodified and are now M.C.L. § 324.11513 and § 324.11538(6), the intercounty waste transportation restrictions at issue in the within case.

of interstate waste disposal invalid. The district court must now determine if the *Fort Gratiot [I]* opinion operates to invalidate the Amendments entirely.

*Id.* at 1203.

On remand, the district court has entered an order of partial [11] summary judgment:

IT IS HEREBY ORDERED AND ADJUDGED that Plaintiff's Motion for Summary Judgment be granted as follows:

1. Sections 13a and 30(2) of MCL 299.401, *et seq.* ("Act 641"), now recodified as Sections 11513 and 11538(6) of the Natural Resources and Environmental Protection Act ("NREPA"), MCL 324.11513 and 324.11538(6), are declared unconstitutional to the extent that they prohibit, limit or otherwise pertain to the transportation, and/or disposal of waste from outside the State of Michigan; and

2. Defendants are permanently enjoined from enforcing and/or applying Sections 13a and 30(2) of Act 641, now recodified as Sections 11513 and 11538(6) of NREPA, in a manner that will prohibit or limit the transportation and/or disposal of waste from outside the State of Michigan.

*Ft. Gratiot Sanitary Landfill, Inc. v. Michigan Dep't of Natural Resources,* No. 89–30015 (E.D.Mich. April 5, 1996). Notably, the order entered by the district court declares the statutory provisions unconstitutional only as they pertain to the transportation of waste from outside the state. Thus, plaintiff's argument that *Ft. Gratiot I* invalidated M.C.L. §§ 299.413a and 299.430(2) in their entirety finds no support in the subsequent rulings on the *Ft. Gratiot I* case.

Two Michigan courts have also considered the statutory provisions at issue in this case after the Supreme Court's *Ft. Gratiot I* ruling. The Clare County Circuit Court determined that the statutory provisions were con-

stitutional as they relate to purely intrastate, intercounty regulation, and the Michigan Court of Appeals affirmed in *Citizens for Logical Alternatives & Responsible Environment, Inc. v. Clare County Bd. of Comm'r,* ["C.L.A.R.E."] 211 Mich.App. 494, 536 N.W.2d 286 (1995).[12] The Michigan Court of Appeals explicitly held that the intercounty waste transportation restrictions survived dormant Commerce Clause scrutiny because *Ft. Gratiot I* did not invalidate M.C.L. §§ 299.413a and 299.430(2) entirely and the unconstitutional portions of those provisions, which discriminate against interstate commerce, were severable from the remainder of the provisions.

This Court similarly holds that *Ft. Gratiot I* did not invalidate the provisions in their entirety, but only insomuch as the provisions sought to limit the import or export of waste across state lines. The within case presents a substantially different inquiry than that presented in *Ft. Gratiot I* because it relates to intercounty regulation and does not restrict transportation of solid waste across state lines. Thus, the Supreme Court's decision in *Ft. Gratiot I* does not compel a determination that the intercounty waste transportation restrictions are unconstitutional as applied to the purely *intrastate* regulation of waste here at issue.

**2. Whether all Regulatory Restrictions on the Flow of Solid Waste Across County Lines are Subject to Strict Commerce Clause Scrutiny**

Waste Management also contends that the intercounty waste transportation restrictions and the provisions relating to intercounty transportation of solid waste in the Ingham County Plan are *per se* invalid because all state or local regulatory restrictions on the flow of solid waste across county lines

---

**11.** The only remaining issue in that case is Fort Gratiot's 42 U.S.C. § 1983 damage claim.

**12.** Waste Management contends that this Court need not and should not follow *C.L.A.R.E.* because it was wrongly decided and because a federal court is not bound by a state appellate court ruling on the United States Constitution or its interpretation of Supreme Court precedent. Although the Court agrees that *C.L.A.R.E.* is not

binding precedent on this Court, the *C.L.A.R.E.* court's interpretation of relevant Supreme Court precedent and ruling on the constitutionality of the intercounty waste transportation restrictions is substantially the same as the rationale employed by both the Sixth Circuit and the United States District Court for the Eastern District of Michigan in their consideration of the *Ft. Gratiot* case subsequent to the Supreme Court's ruling in 1994.

are subject to strict Commerce Clause scrutiny. Waste Management first points to *SSC Corp. v. Town of Smithtown*, 66 F.3d 502 (2nd Cir.1995). *SSC Corp.*, like *Carbone*, however, struck down a flow control ordinance requiring garbage to be disposed of at a particular incinerator. As discussed above, the statutory provisions and Ingham County Plan at issue in this case contain no such requirement. Waste Management next points to *BFI Medical Waste Systems v. Whatcom Co.*, 983 F.2d 911 (9th Cir.1993). In *BFI Medical Waste Systems*, the court struck down an import restriction, which prohibited the disposal of infectious medical waste generated outside the county at any site within the county. The regulation of solid waste at issue in the within case, while prohibiting the import of solid waste generated in-state if not from a county with a reciprocal agreement for disposal, does not serve as an absolute ban on out-of-county waste, and more importantly, does not restrict the importation of solid waste generated out-of-state for disposal purposes. Thus, plaintiff's reliance on *SSC Corp.* and *BFI Medical Waste Systems* is unavailing.

Other cases [13] upon which Waste Management relies similarly fail to support its contention. For instance, in *Waste Systems Corp. v. County of Martin, Minnesota*, 985 F.2d 1381 (8th Cir.1993), the court struck down a county ordinance requiring that all compostable solid waste generated in the county be delivered to a particular facility. The ordinance at issue in *Waste Systems* is unlike the challenged regulations in this case, which contain no such restriction. Similarly, in *Waste Recycling, Inc. v. S.E. Alabama Solid Waste Disposal Authority*, 814 F.Supp. 1566 (M.D.Ala.1993), the court struck down two ordinances requiring waste generated within a city to be taken to a specific facility and two ordinances, which did not impose transportation restrictions but that imposed

strict reporting requirements on waste taken out of state. The restrictions at issue here do not impose any such reporting requirements on waste taken out of state.

### 3. Conclusion

The intercounty waste transportation restrictions and the provisions in the Ingham County Plan essentially provide two options to solid waste haulers: they can dispose of solid waste at one of the sites provided for by the Ingham County Plan, or they can dispose of solid waste at any out-of-state site. Neither the intercounty waste transportation restrictions nor the provisions in the Ingham County Plan limit the plaintiff's ability to place solid waste generated within Ingham County directly into interstate commerce. Instead, the statutory provisions of the Ingham County Plan appear to treat interstate commerce more favorably because they allow plaintiff unrestricted access to interstate commerce, but limit plaintiff's access to intrastate commerce. Thus, Waste Management has failed to meet its burden of showing that in-state interests benefit at the expense of out-of-state facilities.

Accordingly, the Court finds that the intercounty waste transportation restrictions and the Ingham County Plan do not, facially or in practical effect, discriminate against interstate commerce.

### B. *Pike* Balancing

■ Having determined that the intercounty waste transportation restriction and the Ingham County Plan do not discriminate against interstate commerce, the second step of Commerce Clause analysis becomes operative. Thus, the Court must consider whether the statutory provisions and the Ingham County Plan impose any burden on interstate commerce. If so, the Court must then consider whether that burden is clearly exces-

---

**13.** Waste Management also relies on *GSW, Inc. v. Long County, Georgia*, 999 F.2d 1508 (11th Cir. 1993), which concerned a resolution attempting to limit the waste transported to a particular landfill to that waste generated within 150 miles of the county. In that case, the trial court denied the county's motion to dismiss on the basis that the county had failed to show beyond a reasonable doubt that the plaintiff could not prove any set of facts to establish its Commerce Clause claim, and the Eleventh Circuit affirmed. *Id.* at 1519. The *GSW* court merely found that the transportation limitation might be unconstitutional, but did not determine that a Commerce Clause violation existed and never stated that all state or local regulatory restrictions on the flow of solid waste against county lines are subject to strict Commerce Clause scrutiny.

sive in relation to the benefits, and whether the goal of long-term planning for solid waste management could be achieved by a method that imposes a lesser burden on interstate commerce. A facially neutral statute that has only indirect or incidental effects on interstate commerce and regulates evenhandedly should be upheld unless the burden imposed on interstate commerce is clearly excessive when compared to the local benefits. *Pike*, 397 U.S. at 142, 90 S.Ct. at 847. The question is one of degree. *Id.* Whether the burden on interstate commerce will be tolerated depends on the nature of the local interest and on whether that local interest could be as easily promoted in a manner that has less of an impact on interstate commerce. *Id.* Thus, if Waste Management is able to show that the intercounty waste transportation restrictions impose an incidental burden on interstate commerce, Waste Management must also prove either: (1) that the burden imposed upon interstate commerce is clearly excessive in comparison to the nature of the local benefits; or (2) that the local benefit could be accomplished in a less discriminatory manner.

■■■ The Court has already determined that the intercounty waste transportation restrictions and the Ingham County Plan are facially neutral and that they do not favor in-state economic interests over out-of-state interests. When in-state interests do not benefit at the expense of out-of-state facilities, there is no incidental burden on interstate commerce. *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d 659 (1980). Nevertheless, Waste Management contends that the intercounty waste transportation restrictions and the Ingham County Plan burden interstate commerce because Waste Management selects its disposal sites on the basis of economic conditions and landfill prices are higher at Granger's disposal facilities than at other area facilities because Granger has refused to offer Waste Management the customary discount given to large volume transporters. The Court has considered and rejected a

similar argument relating to use of the Granger facilities above, but even taking Waste Management's allegations, which are supported only by an affidavit that is not based upon the personal knowledge of the affiant, nothing contained within the Ingham County Plan or the intercounty waste transportation restrictions requires Waste Management to utilize either Granger facility, and Waste Management does not make similar allegations about the non-Granger facilities. Thus, Waste Management's allegation that costs are higher at the Granger facilities does not establish a burden or interstate commerce.

In addition, Waste Management contends that it is unable to combine waste generated in many counties at its Ingham County Transfer Station and some unspecified amount of recyclables are thus landfilled rather than entering interstate commerce. Waste Management also claims that it has essentially lost the ability to choose landfills with better environmental safeguards, which may increase Waste Management's liability under CERCLA. Finally, Waste Management contends that interstate commerce is burdened because it uses a satellite system using software from a Georgia-based company to direct its waste collection and transportation routes in Ingham County, and any routing changes must be processed through that software. The thrust of these arguments, however, appears to be that Waste management cannot transport solid waste generated in Ingham County to its Venice Park Facility,[14] cannot use the Ingham County Transfer Station for separating recyclables from Ingham County without modifying its current operations and would have to access its software to make changes. Most of the resulting economic effects are a consequence of Waste Management's business operations and choice of geographic locations when purchasing landfills and burden Waste Management's business operations rather than intrastate commerce. See, e.g., *Procter & Gamble Co. v. City of Chicago*, 509 F.2d 69 (7th Cir.1975) (holding burden upon a company's business operations is not a burden on

**14.** The Court notes that Waste Management did not own this facility at the time the Ingham County Plan or the SWMA were enacted, and has not sought an amendment to the Ingham County Plan that would include this landfill.

interstate commerce and does not violate the Commerce Clause).

■ The waste transportation restrictions and the Ingham County Plan are an integral part of a comprehensive plan for long-term management of solid waste. The goal of long-term planning for solid waste management in order to protect public health and safety and the environment is a legitimate local purpose. *Sporhase v. Nebraska,* 458 U.S. 941, 956, 102 S.Ct. 3456, 3464, 73 L.Ed.2d 1254 (1981); *Waste Recycling, Inc. v. Southeast Alabama Solid Waste Disposal Authority,* 814 F.Supp. 1566, 1581 (M.D.Ga. 1993). The burden imposed by the intercounty waste transportation restrictions is minor and amounts only to an unspecified amount of recycled materials which do not end up in interstate commerce. Where the "burden on interstate commerce is slight, and the area of legislation is one that is properly of local concern, the means chosen to accomplish this end should be deemed reasonably effective unless the party attacking the legislation demonstrates the contrary by clear and convincing proof." *Procter & Gamble,* 509 F.2d at 76. Waste Management did not even argue that a comprehensive long-term plan for the management of solid waste could be effectuated by other means imposing a lesser burden on interstate commerce and did not suggest any alternative to the intercounty waste transportation restrictions.

Therefore, the Court concludes that any incidental burden the intercounty waste transportation restrictions and the Ingham County Plan may impose on interstate commerce is not clearly excessive in relation to the legitimate goal of long-term solid waste disposal planning. The Court concluded above that the intercounty waste transportation restrictions and the Ingham County Plan do not discriminate against interstate commerce, and now finds that the intercounty waste transportation restrictions and the Ingham County Plan do not violate the dormant Commerce Clause.

**15.** Plaintiff also seeks a judgment declaring the intercounty waste transportation restrictions and the Ingham County Plan are unconstitutional. Because the Court finds that the intercounty

## IV. DECLARATORY JUDGMENT

■ Defendants [15] seek a judgment declaring that the intercounty waste transportation restrictions and the Ingham County Plan are constitutional methods of regulating the interstate transport and disposal of solid waste. The Declaratory Judgment Act states in pertinent part: "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. A declaratory judgment is appropriate where it will clarify and settle the legal relations at issue and provide relief from the uncertainty caused by the controversy which gave rise to the proceeding. *Allstate Ins. v. Mercier,* 913 F.2d 273, 277 (6th Cir.1990). The Declaratory Judgment Act "is an enabling Act, which confers discretion on the courts rather than an absolute right upon the litigant." *Id.* (quoting *Green v. Mansour,* 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985)) (internal quotation and citation omitted).

In the Sixth Circuit, five factors are generally considered:

(1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata"; (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Id.* (citing E. Borchard, Declaratory Judgments 326 (2d ed. 1941)); *Allstate Ins. Co. v. Green,* 825 F.2d 1061, 1063 (6th Cir.1987); *Grand Trunk W. R.R. v. Consolidated Rail Corp.,* 746 F.2d 323, 325–26 (6th Cir.1984).

waste transportation restrictions and the Plan survive Commerce Clause scrutiny, plaintiff's request for such declaratory judgment is denied.

In this case, all of the relevant factors weigh in favor of granting defendants the declaratory judgment requested. Declaratory relief would settle the present controversy. Similarly, the declaratory relief will help clarify the legal positions of the parties. There is no indication that defendants have sought a declaratory relief for the purpose of "procedural fencing," and a declaratory judgment in this action is not likely to encroach upon state court jurisdiction. The Court finds that the issues raised in this case would be served most effectively by a declaratory judgment, and a declaratory judgment shall issue.

## V. INJUNCTIVE RELIEF

Defendants also seek injunctive relief. Specifically, defendants ask the Court to issue an order enjoining Waste Management from transporting and disposing of waste generated in Ingham County to Michigan landfills other than those explicitly designated in the Ingham County Solid Waste Management Plan and in the Plans of the Michigan counties to which the waste is to be exported. Such an injunction is a form of equitable relief which requires a showing of irreparable harm and inadequacy of legal remedies. See *Amoco Production Co. v. Village of Gambell, Alaska,* 480 U.S. 531, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987); *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 312, 102 S.Ct. 1798, 1803, 72 L.Ed.2d 91 (1982). Defendants have made neither showing. Accordingly, defendants' request for injunctive relief is denied.

## VI. CONCLUSION

For the reasons discussed more fully above, the Court finds that the intercounty waste transportation restriction and the Ingham County Plan do not violate the Commerce Clause, and judgment shall be entered for defendants. An order consistent with this opinion shall issue forthwith.

## JUDGMENT ORDER

For the reasons discussed more fully in the Court's opinion of even date,

**IT IS HEREBY ORDERED** that **JUDGMENT** is **AWARDED** in favor of defendants, and **DECLARATORY JUDGMENT** is **ENTERED** for the defendants.