NATIONAL SOLID WASTES MAN-AGEMENT ASSOCIATION, et al., Plaintiffs–Appellees,

v.

George MEYER, Secretary of the Wisconsin Department of Natural Resources, Defendant–Appellant.

No. 98–2683.

United States Court of Appeals, Seventh Circuit.

Submitted Nov. 10, 1998.

Decided Jan. 25, 1999.

Ann Ustad Smith, Michael, Best & Friedrich, Madison, WI, for Plaintiff–Appellee.

John S. Greene, Wisconsin Dept. of Justice, Environmental Protection Unit, Madison, WI, for Defendant–Appellant.

Before BAUER, EASTERBROOK, and DIANE P. WOOD, Circuit Judges.

PER CURIAM.

Wisconsin had a statute providing that no solid waste could be disposed of in that state, unless the community in which the waste originated enacted an ordinance meeting Wisconsin's specifications for recycling. In 1995 we held that law unconstitutional for four reasons: first, it applied to all waste originating in a jurisdiction whether or not it was bound for Wisconsin; second, it required municipalities outside Wisconsin's borders to enact ordinances favoring Wisconsin's system and thus had extraterritorial application; third, the prospect of conflict (if other states required municipalities to enact different kinds of ordinances) invited balkanization; fourth, the law made interstate commerce in waste more costly than intrastate commerce in that commodity. *National Solid Wastes Management Ass'n v. Meyer*, 63 F.3d 652 (7th Cir.1995). Each effect, we concluded, condemned the law under the negative or dormant component of the commerce clause, which the Supreme Court reads as preventing states from discriminating against interstate traffic. E.g., *C&A Carbone, Inc. v. Clarkstown*, 511 U.S. 383, 114 S.Ct. 1677, 128 L.Ed.2d 399 (1994); *Philadelphia v. New Jersey*, 437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978).

After the Supreme Court denied certiorari, 517 U.S. 1119, 116 S.Ct. 1351, 134 L.Ed.2d 520 (1996), Wisconsin enacted a revised statute that, the district court found, "has not been altered in a way which will practically change the unconstitutional impact with which the Court of Appeals was concerned. In most relevant respects the law has been left as it was. Out-of-state waste can be disposed of in Wisconsin only if the community where the waste originates adopts an ordinance which incorporates the mandatory components of the Wisconsin recycling program into its laws." The solitary difference is that the new law permits an out-of-state municipality to differentiate between waste bound for Wisconsin (which must be collected and recycled under an ordinance that Wisconsin approves) and waste bound for another state, which may be dealt with under the originating or receiving state's laws. See Wis. Stat. §§ 287.07, 287.11; Wis. Admin. Code Ch. NR § 544.04. The district court found that this change addressed only the first of the four obstacles identified in our opinion—and superficially at that. For during the trial that preceded the district court's decision with respect to the first law, Wiscon-

sin contended (with the support of two witnesses) that such a "dual ordinance" is unworkable because waste's destination cannot be determined at the time of its generation. The place of disposal may be selected by the waste hauler in light of varying market conditions. The district court thought that no out-of-state municipality would enact such an ordinance, so that the new law would be the same in operation as the old, but that if such an ordinance were enacted the costs of waste handled under it would rise, discriminating against interstate commerce as a practical matter. The court therefore enjoined the application of Wisconsin's revised law to wastes originating from other states.

■ All we need say to explain why this judgment must be affirmed is that Wisconsin's new law suffers from problems two, three, and four of the old. If, as the district court thought, it also suffers from problem one, that's just gilding the lily. Under Wisconsin's current statute, *no* solid waste may be imported from *any* other state, unless the municipality in which the waste is created enacts an ordinance meeting Wisconsin's specifications, even if its waste is identical to that from "approved" jurisdictions.

■ Wisconsin defends as environmentally sound the specifications it has told its neighbors to adopt. Under the Constitution, however, it just does not matter what those specifications are. No state has the authority to tell other polities what laws they must enact or how affairs must be conducted outside its borders. See *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 571, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996); *Healy v. Beer Institute, Inc.*, 491 U.S. 324, 109 S.Ct. 2491, 105 L.Ed.2d 275 (1989); *Great Atlantic & Pacific Tea Co. v. Cottrell*, 424 U.S. 366, 379–80, 96 S.Ct. 923, 47 L.Ed.2d 55 (1976); *Baldwin v. G.A.F. Seelig, Inc.*, 294 U.S. 511, 55 S.Ct. 497, 79 L.Ed. 1032 (1935). Wisconsin adds insult to injury by declaring that an ordinance is inadequate unless the jurisdiction conducts "public education" programs to tout the benefits of Wisconsin's approach to recycling. Wis. Stat. § 287.11(2)(a). Not satisfied by requiring other states' municipalities to implement its program, Wisconsin insists that they become its propagandists.

As we stressed in our earlier opinion, it is essential to ask whether the interaction of many extraterritorial laws similar to Wisconsin's would serve as a clog on interstate commerce. The answer here must be yes. If Wisconsin can tell municipalities in Illinois or Minnesota what recycling ordinances they must adopt in order to transact interstate commerce, then so can Indiana (not to mention Illinois and Minnesota). The resulting conflict could stop all traffic at state borders. The potential for interference is great even if other states do not direct their municipalities to deviate from the regimen Wisconsin favors. Consider Clarkstown, New York, which wanted all wastes to stay home, to increase the volume of a local landfill and incinerator. But waste haulers wanted to ship elsewhere, because Clarkstown's tipping fees were so high. Clarkstown prosecuted a waste hauler that diverted some wastes to Indiana. *C&A Carbone* held the local-preference law invalid because it blocked private traffic in wastes to states where disposal was cheaper. With the aid of Wisconsin's new law, however, Clarkstown can block one alternative destination—and, if Wisconsin's law is valid, a similar law from Indiana also would be. (Indiana, like Wisconsin, has attempted to discourage interstate traffic in waste. See *Government Suppliers Consolidating Services, Inc. v. Bayh*, 975 F.2d 1267 (7th Cir.1992).) Needless to say, Clarkstown hasn't enacted a law complying with Wisconsin's mandates. By refusing to act, it has achieved passively (with the aid of Wisconsin's border-closing law) what *C&A Carbone* said it could not achieve actively. And this is only one example of the ways in which Wisconsin's insistence that out-of-state jurisdictions enact Wisconsin's favored approach to waste management impedes commerce. Wisconsin has extended the other 49 states (and their municipalities) an option to block interstate commerce by inaction (that is, by failure to enact a local law). Any other jurisdiction's raw desire to prevent interstate commerce now has that effect, as does legislative gridlock. If one state cannot close its borders by its say-so, it cannot create the option for its neighbors to close the borders by inaction.

The two cases on which Wisconsin principally relies—*Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981), and *Maine v. Taylor*, 477 U.S. 131, 106 S.Ct. 2440, 91 L.Ed.2d 110 (1986)—offer it no aid. *Taylor* holds that a state may enact a law discriminating against interstate commerce (there, banning the importation of bait fish) if that serves a vital public need and no non-discriminatory methods of achieving the same end are available. We concluded on the last appeal that Wisconsin has a non-discriminatory method: it may require solid wastes to be processed to remove the eleven substances that Wisconsin believes should be kept out of landfills. 63 F.3d at 661–63. That is no less true today than it was in 1995, so it is unnecessary to determine whether recycling is a public need on a par with the prevention of disease. *Clover Leaf Creamery* held that a state may ban the sale of milk in plastic containers. This law may have borne more heavily on out-of-state firms that formerly used plastic containers, but it did not discriminate *in terms*, and it certainly did not oblige any other state or jurisdiction to enact a law requiring local producers to switch to plastic. Firms were free to use glass in one state, waxed paper in another, and plastic in a third. *Clover Leaf Creamery* has nothing in common with the approach Wisconsin has elected to follow.

Last time around, we told Wisconsin that the Constitution permits it to require imported wastes to be processed in order to curtail the burden on landfills, but that the Constitution does not permit Wisconsin to limit interstate traffic to waste originating in jurisdictions that have enacted particular ordinances. Instead of enacting a non-discriminatory waste-processing law, Wisconsin has fiddled with its approved-recycling-ordinance approach. But that approach is defective at the rootstock; no trimming of the branches can save it. Wisconsin's legislative power is limited to what happens in Wisconsin; efforts to interfere with or raise the costs of interstate shipments, or to tell neighboring jurisdictions what laws to enact, are doomed. There are no material factual disputes; the terms of the law condemn it, so summary judgment was apt. The district court prop-erly enjoined the latest version of Wisconsin's plan.

AFFIRMED.