THE NATIONAL SOLID WASTES MANAGEMENT ASSOCIATION and REPUBLIC SERVICES OF MICHIGAN I, L.L.C., Plaintiffs,

v.

CHARTER COUNTY OF WAYNE and Robert A. Ficano, County Executive, Defendants.

No. 03–60188.

United States District Court, E.D. Michigan, Southern Division.

Feb. 3, 2004.

Robert A. Marsac, Lisa A. Robinson, Dennis M. Devaney, Williams Mullen, Detroit, MI, for Plaintiffs.

Hilda V. Gurley, Samuel A. Nouhan, Wayne County Corporation Counsel, Detroit, MI, for Defendant.

*OPINION AND ORDER OF THE COURT GRANTING PLAINTIFFS' MOTION FOR DECLARATORY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR DECLARATORY JUDGMENT AND SUMMARY JUDGMENT*

BATTANI, District Judge.

## I. INTRODUCTION

Before the Court are Plaintiffs' Motion for Declaratory Relief and Defendants' Cross–Motion for Declaratory Judgment and Summary Judgment. On September 5, 2003, Plaintiff filed a complaint for Declaratory and Injunctive relief, challenging the constitutionality of a county waste disposal ordinance under the domestic Commerce Clause, foreign Commerce Clause, Foreign Affairs Power, and substantive and procedural components of the Due Process Clause. Plaintiffs asked the Court to declare several amendments to the ordinance (hereinafter "the Amendments") invalid and to enjoin their enforcement by Defendants. Defendants filed a cross-motion for Declaratory Judgment and Summary Judgment on September 17, 2003. On September 24, 2003, the Michigan Waste Industries Association filed a brief as amicus curiae in support of Plaintiffs' motion.

The Court held a hearing on October 6, 2003, with respect to Plaintiffs' Motion for Preliminary Injunction. The Court granted that motion on October 16, 2003, and enjoined Defendants from enforcing the Amendments until final disposition of the case. The Court allowed the parties addi-

tional time for supplemental briefing on their declaratory judgment motions. The time for filing those briefs has closed. The parties agree that there are no disputed issues of fact, and that the resolution of this case turns on an application of law. For the reasons stated below, the Court hereby GRANTS Plaintiffs' Motion for Declaratory Judgment and DENIES Defendants' Motion for Declaratory Judgment and Summary Judgment.

## II. STANDARD OF REVIEW

Fed.R.Civ.P. 56 states that summary judgment "shall be rendered forthwith if the pleadings, [etc.,] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In addition, the Declaratory Judgment Act provides, in pertinent part, that: "[i]n a case of actual controversy within its jurisdiction...any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (1994). Such ruling of the Court "[s]hall have the force and effect of a final judgment or decree and shall be reviewable as such." *See id.* The granting of declaratory relief "[i]s appropriate where it will clarify and settle the legal relations at issue and provide relief from the uncertainty caused by the controversy which gave rise to the proceeding." *Waste Mgmt. of Mich. v. Ingham County*, 941 F.Supp. 656, 668 (W.D.Mich.1996) (citation omitted).

## III. STATEMENT OF FACTS

### 1. The Parties

Plaintiff National Solid Wastes Management Association ("NSWMA") is a non-profit trade association that represents for-profit companies providing solid and medical waste collection, recycling and disposal services. Plaintiff Republic Services of Michigan is a member of NSWMA, and owns and operates the Carleton Farms Landfill in Wayne County, Michigan. Defendant Wayne County, together with the Wayne County Commission, is responsible for solid waste planning, implementation and enforcement in Wayne County. Defendant Robert Ficano ("Ficano") is Wayne County Executive. Amicus Curiae Michigan Waste Industries Association (MWIA) is a Michigan non-profit corporation representing approximately fifty Michigan-based companies dedicated to the collection, processing, recycling and disposal of solid waste within Michigan. MWIA's members consist of nearly every private entity owning or operating a municipal solid waste landfill in Michigan, including some in Wayne County.

### 2. Michigan Waste and Relevant Background

A report prepared by the Michigan Department of Environmental Quality ("MDEQ") in March 2003 indicates that, in 2002, eighty percent of the solid waste disposed of in Michigan's solid waste landfills came from Michigan, twelve percent from Canada, and eight percent from several of Michigan's sister states, including New Jersey, New York, Ohio, Pennsylvania, Indiana, Illinois and Connecticut. (Pls.' Br. in Supp. of Mot. for Decl. and Inj. Relief, Ex. 3). On May 28, 1999, former Michigan governor John Engler established the Michigan Solid Waste Importation Task Force ("Task Force") to address the problem of Michigan's diminishing landfill space. The Task Force was charged with identifying the trends, causes and consequences of imported solid waste; meeting with members of Congress to encourage the passage of federal legislation allowing Michigan to control solid waste importation; and, making recommendations to the Governor and the

MDEQ regarding the control of interstate and international waste imports.

On November 22, 2000, the Task Force submitted an official report to the Governor and the MDEQ stating that significant increases in waste imports would undermine Michigan's commitment to waste planning and hinder the growth of recycling in Michigan. The report acknowledged that Michigan's past legislative efforts to restrict waste imports were unsuccessful, and concluded that "[t]he only remedy sure to withstand legal challenge is one based on authority granted to states by Congress." (Pls.' Br., Ex. 1). The Task Force recommended the development of federal, as opposed to state, waste legislation.

On July 23, 2003, a Congressional hearing was held to discuss, in part, proposed waste regulation legislation H.R. 382, H.R. 411 and H.R. 1730. The transcript from that hearing contains the following statement from Michigan Representative John Dingell:

> States have been searching for a legal means to control shipments of municipal solid waste from other States and other countries. Unfortunately, the result has only been costly and unproductive litigation. State laws have been struck down by the courts because under the commerce clause of the Constitution, only Congress can grant the States and localities the right to fully regulate waste imports into their jurisdiction. (Pls.' Additional Ex., Ex. 18).

The hearing transcript also contains a prepared statement by Ficano discussing the issue of waste imported to Michigan from Canada and other states. In that statement, Ficano acknowledged that "[t]ry as we might to stem the tide of imported waste coming into our County, we are limited by law, precedent, and international agreements." (Pls.' Ex. 18). He also noted that "[d]espite our best ef-forts, the ultimate problem of imported waste coming into Michigan, and especially Wayne County, demands Federal intervention. Congress must enact laws to allow States to deal with the flow of trash between States." (Id.) In imploring Congress to enact authorizing legislation, Ficano recognized that Wayne County's authority to act on its own was "severely limited." (Id.)

### 3. The Amendments

The Michigan Solid Waste Management Act governs the disposal of waste in the State of Michigan. MICH. COMP. LAWS § 324.11501 (1999) et seq. The Act authorizes a city, county or district to create a solid waste management program once it has received proper certification by the appropriate health department. M.C.L. § 324.11508. Wayne County has obtained this certification from the MDEQ, and has enacted the Wayne County Solid Waste Management Ordinance (WCSWMO) to govern waste disposal in Wayne County.

On August 17, 2003, the Wayne County Commission passed a resolution adopting several amendments to the WCSWMO. The Amendments were introduced to the Wayne County Commission by Ficano and Kurt Heise, Director of the Department of Environment, for the purpose of achieving "a reduction in the waste stream being disposed of in county-based landfills and confirm[ing] the County's commitment to conserving landfill space and maximizing the life of landfills." (Defs.' Resp., Ex. D).

Section 141.1 of the Amendments provides:

> It shall be unlawful for an owner or operator of a landfill to accept solid waste from a municipality, county, state, country or other generator that is not regulated by a beverage container deposit law that provides regulation of beverage containers and has bottle re-

turn rates comparable to those reported by the Michigan Department of Treasury for Michigan's "Beverage Containers Initiated Law of 1976" M.C.L. 445.571–445.576 (Bottle Bill).[1]

Sections 141.2 and 141.3 require Wayne County landfill owners and operators to obtain a signed certificate from their customers attesting to their satisfaction of the conditions listed in section 141.1. Sections 304.1 and 304.2 of the WCSWMO subject violators to civil sanctions, including fines of up to $10,000, while section 305 provides for criminal penalties, including imprisonment.

Ficano officially executed the Wayne County resolution on August 13, 2003, setting October 1, 2003 as the Amendments' enforcement date. That date was suspended when the Court granted Plaintiffs' Motion for Preliminary Injunction on October 16, 2003.

## IV. ANALYSIS

Plaintiffs challenge the constitutionality of the Amendments on several grounds, including the Domestic and Foreign Commerce Clause, the Foreign Affairs power, and the Due Process Clause. Because the Court deems the Amendments invalid under the domestic and foreign components of the Commerce Clause, it will not address Plaintiffs' remaining constitutional claims.

As to Plaintiffs' Commerce Clause challenge, Plaintiffs contend that the Amendments discriminate against interstate and foreign commerce by impeding the free flow of non-Michigan waste into Wayne County. According to Plaintiffs, the Amendments are discriminatory in that they create an unlawful distinction between in-state waste, which automatically qualifies for disposal in Wayne County under the Amendments, and out-of-state waste, which does not. Defendants respond that the Amendments constitute a neutral waste disposal regulation that applies equally to in-state and out-of-state waste. According to Defendants, any effects had by the Amendments on interstate or foreign commerce are merely incidental.

### 1. Law

■ The Commerce Clause empowers Congress "to regulate commerce with foreign nations, and among the several states." U.S. CONST. art. I, § 8, cl. 3. While the Commerce Clause affirmatively grants Congress the power to regulate interstate and foreign commerce, it also implicitly restrains the ability of the several states to discriminate against or impose substantial burdens upon interstate or foreign commerce. *New Energy Co. of Indiana v. Limbach*, 486 U.S. 269, 273, 108 S.Ct. 1803, 100 L.Ed.2d 302 (1988); *City of Philadelphia v. N.J.*, 437 U.S. 617, 622–23, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978); *E. Ky. Res. v. The Fiscal Ct. of Magoffin County, Ky.*, 127 F.3d 532, 539–40 (6th Cir.1997); *Nat'l Foreign Trade Council v. Natsios*, 181 F.3d 38, 61–62 (1st Cir.1999). The Commerce Clause contains no explicit language to this effect, but courts have long recognized that the limitation on a state's power to burden interstate and foreign commerce derives from the negative or "dormant" aspect of the Clause. *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 287, 117 S.Ct. 811, 136 L.Ed.2d 761 (1997) (citations omitted). It is well-established that solid waste is an article of commerce. *Fort Gratiot Sanitary Landfill, Inc. v. Mich. Dept. of Natural Res.*, 504 U.S. 353, 359, 112 S.Ct. 2019, 119 L.Ed.2d 139 (1992); *City of Philadelphia*, 437 U.S. at 622–23, 98 S.Ct. 2531.

---

**1.** The Michigan Bottle Bill requires beverage dealers to provide a minimum deposit of ten cents on all returnable beverage containers. M.C.L. 445.571–.572.

When a state unconstitutionally regulates the movement of *interstate* commerce, it is said to violate the dormant "domestic" or "interstate" Commerce Clause. This aspect of the Commerce Clause prohibits states from " '[a]dvanc[ing] their own commercial interests by curtailing the movement of articles of commerce, either into or out of the state.' " *Fort Gratiot,* 504 U.S. at 359, 112 S.Ct. 2019 (quoting *H.P. Hood & Sons, Inc. v. Du Mond,* 336 U.S. 525, 535, 69 S.Ct. 657, 93 L.Ed. 865 (1949)). In addition, when a state unconstitutionally regulates the movement of *foreign* commerce, it is said to violate the dormant "foreign" Commerce Clause. *Natsios,* 181 F.3d at 61–62. State or local laws that burden foreign commerce " 'are subjected to a more rigorous and searching scrutiny.' " *Norfolk S. Corp. v. Oberly,* 822 F.2d 388, 404 (3d Cir.1987) (quoting *S.-Cent. Timber Dev., Inc. v. Wunnicke,* 467 U.S. 82, 100, 104 S.Ct. 2237, 81 L.Ed.2d 71 (1984)). This rule serves "the need of ensuring uniformity among the states in the area of foreign trade." *Id.* at 399.

Since the domestic and foreign aspects of the Commerce Clause are founded upon comparable principles, the Court will conduct the same analysis with respect to Plaintiffs' domestic and foreign Commerce Clause challenges. The Supreme Court has constructed a two-step inquiry to guide courts evaluating the constitutionality of state or local laws under the Commerce Clause. *Or. Waste Sys., Inc. v. Dep't. of Quality of the State of Or.,* 511 U.S. 93, 99, 100–01, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994); *Natsios* 181 F.3d at 67 (applying the two-part test to foreign Commerce Clause challenge). Under the first step, the Court determines "whether the statute directly burdens interstate commerce or discriminates against out-of-state interests." *E. Ky. Res.,* 127 F.3d at 540. Discrimination is defined as the "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Id.* (internal quotation marks and citation omitted). A statute can discriminate in three ways: "(a) facially, (b) purposefully, or (c) in practical effect." *Id.* (citation omitted).

■ Under the second step, the Court applies the proper level of constitutional scrutiny to the law at issue, depending on whether it is discriminatory or nondiscriminatory. *SDDS, Inc. v. State of S.D.,* 47 F.3d 263, 268 (8th Cir.1995). A discriminatory law is presumptively invalid, and the legal standard applied is strict scrutiny. *Or. Waste Sys.,* 511 U.S. at 94, 114 S.Ct. 1345 (domestic commerce clause); *Natsios,* 181 F.3d at 70 (foreign commerce clause). Such a law will survive strict scrutiny, and overcome the presumption of invalidity accorded to it, only where " 'the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism.' " *Fort Gratiot,* 504 U.S. at 359, 112 S.Ct. 2019 (quoting *New Energy Co.,* 486 U.S. at 274, 108 S.Ct. 1803). This requires the defendant to " 'justify [the law] both in terms of the local benefits flowing from the statute and the unavailability of nondiscriminatory alternatives adequate to preserve the local interests at stake.' " *Chem. Waste Mgmt. v. Hunt,* 504 U.S. 334, 342, 112 S.Ct. 2009, 119 L.Ed.2d 121 (1992) (quoting *Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 353, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)); *Natsios,* 181 F.3d at 70 (foreign commerce clause).

■ A state or locality's burden to justify a discriminatory law is more demanding under the foreign Commerce Clause than the domestic Commerce Clause. *Antilles Cement Corp. v. Calderon,* 288 F.Supp.2d 187, 195 (D.P.R., 2003) ("discrimination against foreign commerce is subject to an even more rigorous test than that applied to the domestic commerce clause") (citing

*Wunnicke*, 467 U.S. at 100, 104 S.Ct. 2237); *see also* LAURENCE G. TRIBE, AMERICAN CONSTITUTIONAL LAW 1152 (3d ed.2000) (a law discriminating against foreign commerce "must be shown not to affect national concerns to any significant degree, a task far more difficult than in the case of interstate commerce"). This is so because the scope of Congress' foreign commerce power is greater than its domestic counterpart, *Japan Line, Ltd. v. Los Angeles County*, 441 U.S. 434, 448, 99 S.Ct. 1813, 60 L.Ed.2d 336 (1979), and "it is crucial to the efficient execution of the Nation's foreign policy that the Federal Government...speak with one voice when regulating commercial relations with foreign governments." *Wunnicke*, 467 U.S. at 100, 104 S.Ct. 2237 (internal. quotation marks and citations omitted).

If the Court decides that the law at issue is not discriminatory, it will be reviewed under a more flexible balancing test rather than strict scrutiny. Where the law "regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970) (citation omitted). In judging whether the burden imposed by the law on interstate or foreign commerce is unconstitutional, the Court must analyze the type of local interest involved and decide "whether it could be promoted as well with a lesser impact on interstate activities." *Id.*

The Supreme Court has recently considered Commerce Clause challenges to state and local waste disposal regulations. In every instance, the Court has found the challenged law unconstitutional. Beginning with *City of Philadelphia*, the Supreme Court invalidated a New Jersey statute that prohibited the importation of out-of-state waste, finding that "a State may not accord its own inhabitants. a preferred right of access over consumers in other States to natural resources located within its borders." 437 U.S. at 627, 98 S.Ct. 2531 (citation omitted). In *Fort Gratiot*, the Court struck down a Michigan law that prohibited private landfill operators from accepting waste that originated outside of their respective counties, because it unconstitutionally permitted Michigan's eighty-three counties to isolate themselves from the national economy, and protected them from competition from out-of-state waste producers. 504 U.S. at 361, 112 S.Ct. 2019. The Court has also considered an Alabama law that imposed a disposal fee on out-of-state hazardous waste, finding that Alabama's differential treatment of out-of-state waste violated the Commerce Clause because "[n]o State may attempt to isolate itself from a problem common to the several States by raising barriers to the free flow of interstate trade." *Chem. Waste Mgmt.*, 504 U.S. at 339–40, 112 S.Ct. 2009. In *C & A Carbone v. Town of Clarkstown*, 511 U.S. 383, 114 S.Ct. 1677, 128 L.Ed.2d 399 (1994), the Supreme Court found unconstitutional a local waste flow-control ordinance that required all solid waste to be processed at a specific transfer station before leaving the municipality, because it "[d]eprive[d] out-of-state businesses access to a local market." *Id.* at 389, 114 S.Ct. 1677. Finally, in *Oregon Waste Systems, Inc.*, the Supreme Court struck down an Oregon law that taxed out-of-state waste at a higher rate that in-state waste, noting that the state legislation was unconstitutional "[h]owever serious the shortage in landfill space may be." 511 U.S. at 107, 114 S.Ct. 1345. In judging the constitutionality of the Amendments, this Court is guided by the principles enunciated in these cases.

### 2. Discussion

The Court begins its analysis of the Amendments by determining whether they are discriminatory, either facially, in effect, or purposefully. If the Court determines that they are discriminatory, the Amendments are presumptively invalid, and will pass constitutional muster only if they survive strict scrutiny.

### A. The Amendments are Discriminatory

#### i. Facial Discrimination

The Amendments provide that it shall be unlawful for a Wayne County landfill operator to accept solid waste "[f]rom a municipality, county, state, country or other generator that is not regulated by a beverage container deposit law and has bottle return rates comparable to those reported by the Michigan Department of Treasury for Michigan's [Bottle Bill]." This language is not facially discriminatory. It contains no overt distinction between in-state and out-of-state waste, nor does it expressly bar the entry of out-of-state waste into Wayne County. *But cf. Fort Gratiot,* 504 U.S. at 355, 112 S.Ct. 2019 (New Jersey law prohibited the importation of most "solid or liquid waste which originated or was collected *outside of the territorial limits of the State*") (emphasis added). The Amendments apply to solid waste from *any* municipality, county, state or country, including any municipality or county located within the state of Michigan, and are not discriminatory on their face.

#### ii. Discriminatory Effect

■ Next, the Amendments must be scrutinized to determine if they are discriminatory in effect. *C & A Carbone,* 511 U.S. at 394, 114 S.Ct. 1677 ("[t]hough the . . . ordinance may not in explicit terms seek to regulate interstate commerce, it does so nonetheless by its practical effect and design"). The Court finds that Plaintiffs have made this showing. The Commerce Clause prohibits a state from isolating itself from the national and international economy by erecting barriers that impede the flow of interstate and foreign trade. *Id.* at 390, 114 S.Ct. 1677 (noting that the Supreme Court has "interpreted the Commerce Clause to invalidate local laws that impose commercial barriers or discriminate against an article of commerce by reason of its origin or destination out of State"); *City of Philadelphia,* 437 U.S. at 627–28, 98 S.Ct. 2531; *Chem. Waste Mgmt.,* 504 U.S. at 339–40, 112 S.Ct. 2009. Therefore, a law that gains "a local benefit by throwing the attendant burdens on those without the state[,]" *S.C. State Highway Dep't v. Barnwell Bros., Inc.,* 303 U.S. 177, 185–86, 58 S.Ct. 510, 82 L.Ed. 734 (1938), or "deprives out-of-state businesses of access to a local market[,]" has a discriminatory effect on interstate and foreign commerce. *C & A Carbone,* 511 U.S. at 389, 114 S.Ct. 1677. Relatedly, "States and localities may not attach restrictions to exports or imports in order to control commerce in other States." *Id.* at 393, 114 S.Ct. 1677 (citing *Baldwin v. G.A.F. Seelig, Inc.,* 294 U.S. 511, 55 S.Ct. 497, 79 L.Ed. 1032 (1935)). A law which "essentially controls the conduct of those engaged in commerce occurring wholly outside the State . . ." has an extraterritorial discriminatory effect on interstate and foreign commerce. *Nat'l Solid Wastes Mgmt. Ass'n v. Meyer,* 63 F.3d 652, 658 (7th Cir.1995) (hereinafter *"NSWMA I"*); *see also New Energy,* 486 U.S. at 275, 108 S.Ct. 1803 (a state may not condition the removal of an economic disadvantage on the other state's passing of reciprocal legislation); *Natsios,* 181 F.3d at 69 (Massachusetts law that conditioned state procurement decisions on conduct occurring in Burma violated foreign Commerce

Clause by attempting to control conduct beyond state borders).

Here, the Amendments require waste generators to satisfy two criteria before they will be permitted to deposit their waste in Wayne County. First, they must show that their municipality, county, state or country is regulated by a beverage container deposit law comparable to Michigan's. Second, they must demonstrate that their municipality, county, state or country has bottle return rates comparable to those reported for Michigan. Despite Defendants' assertion that these two conditions must be satisfied by *all* municipalities, counties, states and countries, it is clear that the Amendments, as applied, have a differential and burdensome impact on municipalities and counties located outside of Michigan, as opposed to those located within the state. Undoubtedly, Michigan waste generators satisfy the two criteria contained in the Amendments. By virtue of their in-state residence, they are, by default, subject to the Michigan Bottle Bill, and will have the same bottle return rates as those reported for Michigan. Consequently, if enforced, the Amendments will grant waste generated within the state an automatic right of entry to Wayne County landfills.

If the Amendments granted out-of-state waste generators the same immediate right of entry, the Court would deem them neutral. However, they do not. Most states within the United States, as well as Canada, do not have beverage container deposit legislation. Waste originating in those jurisdictions, unlike Michigan waste, is absolutely and permanently barred from Wayne County. As to the handful of states that have beverage container deposit legislation, none of them has a ten cent bottle deposit like Michigan's. Waste generators in those jurisdictions, unlike their Michigan counterparts, are presumptively prohibited from depositing their waste in

Wayne County unless they demonstrate that their bottle return legislation compares to Michigan's ten cent deposit *and* that their bottle return rates compare to Michigan's. If these out-of-state generators fail to make this showing, their waste is barred from Wayne County.

Clearly, the Amendments, if enforced, will reduce the amount of out-of-state and out-of-country waste imported into Wayne County, but will have no corresponding impact on waste generated within the state. Therefore, notwithstanding Plaintiffs' arguments to the contrary, the two conditions contained in the Amendments target out-of-state waste only. This kind of differential treatment, which advantages in-state economic interests over out-of-state economic interests, is prohibited by the Commerce Clause. *E. Ky. Res.*, 127 F.3d at 543 ("a statute which has a discriminatory effect, for Commerce Clause purposes, is a statute which favors in-state economic interests while burdening out-of-state interests"); *see also C & A Carbone*, 511 U.S. at 389, 114 S.Ct. 1677 (finding that a local flow control ordinance deprived out-of-state businesses of access to a local market, and therefore, had a discriminatory effect on commerce, by driving up the cost for out-of-state waste disposal within the state); *Chem. Waste Mgmt.*, 504 U.S. at 342, 112 S.Ct. 2009 (Alabama waste regulation discriminatory where it raised barriers to the free flow of interstate trade by imposing an additional fee on out-of-state waste processed within the state).

In addition to constituting a barrier to out-of-state waste, the Amendments attempt to control the conduct of out-of-state waste generators engaged in interstate and foreign commerce. If a waste generator resides in a state or country that does not have a bottle bill comparable to Michigan's, the barrier will be overcome *only* if the generator's place of residence creates

beverage container legislation and bottle return rates consistent with Michigan's. This effort by Defendants to impose its recycling standards on outside jurisdictions is condemned by the Commerce Clause. *Nat'l Solid Wastes Mgmt. Ass'n v. Meyer*, 165 F.3d 1151, 1154 (7th Cir. 1999) (hereinafter "*NSWMA II* ") (holding that the Constitution does not permit a state to "limit interstate traffic to waste originating in jurisdictions that have enacted particular ordinances"). In a case nearly identical to the one at bar, the Seventh Circuit struck down a state law that prohibited the disposal of out-of-state waste in Wisconsin where the waste was generated in a region that had not adopted key parts of the state's recycling program. *NSWMA I*, 63 F.3d at 652. The law imposed the burden of compliance on all citizens of a participating community, regardless of each citizen's intent to dump waste in Wisconsin. The court found the statute to be a discriminatory attempt by the state to regulate interstate commerce because it "condition[ed] the use of Wisconsin landfills by non-Wisconsin waste generators on their home communities' adoption and enforcement of Wisconsin recycling standards..." *Id.* at 658. According to the Court, the law created "[a]n embargo on waste from a hauler from another state, or a community within that state, unless that political entity has decided to adopt the Wisconsin view of environmental management." *Id.* at 661–62. When the Seventh Circuit later revisited a modified version of the statute in *NSWMA II*, it rejected it once again, holding that "[n]o state has the authority to tell other polities what laws they must enact or how affairs must be

conducted outside its borders." 165 F.3d at 1153 (citations omitted).

Here, the Court finds that the Amendments suffer from the same fatal flaws as those present in the Wisconsin law at issue in *NSWMA I* and *NSWMA II*. In particular, the Amendments implicitly condition the use of Wayne County landfills by non-Michigan waste producers on their home communities' enactment of legislation equivalent to the Michigan Bottle Bill. In this sense, the Amendments create an embargo on the entry of non-Michigan waste into Wayne County that will be lifted only when outside jurisdictions adopt Michigan's approach to solid waste management. The extraterritorial effect of the Amendments will be equally as sweeping as that in *NSWMA I* and *NSWMA II*. If an out-of-state jurisdiction decides to enact a new beverage container regulation, *all* of its citizens will be subject to that law, regardless of whether they intend to dispose of their waste in Wayne County. The Court admonishes Wayne County for attempting to force its view of environmental conservation on the citizens of its sister states and Canada in this manner.[2]

Furthermore, in *Hardage v. Atkins*, 619 F.2d 871 (10th Cir.1980), the Tenth Circuit struck down a similar Oklahoma waste disposal regulation that prohibited the shipment of controlled industrial waste into the state unless the state of origin enacted "substantially similar standards for controlled industrial waste disposal as, and...entered into a reciprocity agreement with, the State of Oklahoma." The court declared the "substantially similar standards" language of the ordinance un-

---

**2.** Defendants attempt to distinguish this case from *NSWMA I* and *NSWMA II* on the grounds that the law at issue in those cases imposed the whole of Wisconsin's recycling program on out-of-state waste generators, whereas the Amendments involve only a single piece of legislation, namely the Michigan Bottle Bill. The Court finds that this distinction, if it can even be called that, is immaterial. Regardless of whether the statute at issue covers an entire regulatory system or an isolated ordinance, it is unconstitutional if its effect is discriminatory.

constitutional on the grounds that it "imposes an economic embargo on all incoming shipments [of waste], unless and until the state of origin enacts a law prescribing standards which are substantially similar to those of Oklahoma." *Id.* at 873.[3] The scope of that statute was found to be unconstitutionally broad in that it "reaches out and seeks to force the enactment in the state of origin of a statute with standards similar to Oklahoma." *Id.* Here, the Amendments have the same effect as the "substantially similar standards" language deemed unconstitutional in *Hardage.* By refusing to accept waste from states, counties, or countries that do not have bottle return legislation and bottle return rates comparable to Michigan's, Defendants essentially require non-Michigan jurisdictions to enact recycling standards that are "substantially similar" to those established in Michigan. As *Hardage* makes clear, such action on the part of Defendants is barred by the Commerce Clause.

The Court rejects Defendants' assertion that the Amendments are neutral since they regulate or burden Michigan and non-Michigan waste evenhandedly. In so arguing, Defendants claim that "discrimination requires that something be required of out-of-state actors that is not required of in-state actors." Even by Defendants' own definition of discrimination, the Amendments are not neutral. As discussed above, in order to meet the requirements of the Amendments, *nothing* is required of Michigan waste generators. Out-of-state waste generators, however, must demonstrate that their beverage container regulation laws and bottle return rates compare to Michigan's. If they cannot make this threshold showing, they can either urge their legislative body to enact a conforming law (and hope that it does), or deposit their waste elsewhere.

To that end, Defendants' reliance on *Sporhase v. ex. rel. Douglas,* 458 U.S. 941, 102 S.Ct. 3456, 73 L.Ed.2d 1254 (1982), is misplaced. In *Sporhase,* plaintiffs challenged a state law that restricted the withdrawal of ground water from any in-state well for use in an adjoining state. While the Court ultimately invalidated the law under the Commerce Clause, it was first found to be nondiscriminatory, since it equally burdened intrastate and interstate transfers of water. The Court explained that "a State that imposes *severe withdrawal and use restrictions* on its own citizens is not discriminating against interstate commerce when it seeks to prevent the uncontrolled transfer of water out of the State. An exemption for interstate transfers would be inconsistent with the ideal of evenhandedness in regulation." *Id.* at 955–56, 102 S.Ct. 3456; *see also Minn. v. Clover Leaf Creamery Co.,* 449 U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981) (Minnesota statute that prohibited all milk retailers from selling their milk products in plastic, nonreturnable containers found to be nondiscriminatory where it regulated without regard to whether the milk, containers, or sellers are from outside the state). The Court's holding in *Sporhase* is inapplicable here, since the Amendments do not restrict the actions of Wayne County and Michigan residents in any way. They restrict only the ability of non-Michigan waste generators to deposit their waste in Wayne County, and, for this reason, do not regulate in-state and out-of-state waste even handedly.

In any event, even if Defendants are correct that the Amendments apply to in-state as well as out-of-state waste, the Supreme Court has held this fact, alone, is not dispositive as to a finding of neutrality. To the contrary, " 'a burden imposed by a

---

**3.** In *Hardage v. Atkins,* 582 F.2d 1264 (10th Cir.1978), the court found that the ordi-
nance's mandatory reciprocity clause violated the Commerce Clause of the Constitution.

State upon interstate commerce is not to be sustained simply because the statute imposing it applies alike to the people of all the States, including the people of the State enacting such statute.'" *Fort Gratiot,* 504 U.S. at 361, 112 S.Ct. 2019 (quoting *Brimmer v. Rebman,* 138 U.S. 78, 82–83, 11 S.Ct. 213, 34 L.Ed. 862 (1891)). For instance, in *Fort Gratiot,* the state argued for the neutrality of its waste regulation on the grounds that it treated waste from Michigan counties no differently than waste from other states. The Court dismissed that argument, finding that because the law impermissibly authorized Michigan's counties to isolate themselves from the national economy by excluding non-county waste from their landfills, it was immaterial that it allegedly burdened in-state and out-of-state waste generators alike. 504 U.S. at 360, 112 S.Ct. 2019. Similarly, in *C & A Carbone,* the Supreme Court rejected the town's argument that its ordinance was nondiscriminatory since it applied to all solid waste regardless of its in-state or out-of-state origin. In striking down the law, the Court noted that "[t]he ordinance is no less discriminatory because in-state or in-town processors are also covered by the prohibition." 511 U.S. at 391, 114 S.Ct. 1677; *see also NSWMA I,* 63 F.3d at 659 ("'the Commerce Clause precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State...'") (quoting *Healy v. Beer Institute,* 491 U.S. 324, 336, 109 S.Ct. 2491, 105 L.Ed.2d 275 (1989)). Accordingly, in the instant case, because the discriminatory effect of the Amendments is clear, the Court will not consider them neutral simply because they purport to impact in-state interests.

Furthermore, the Court finds that Defendants' reliance on *Eastern Kentucky Resources,* where the Sixth Circuit upheld a Kentucky statute that required in-state counties to prepare waste management plans that identified additional capacity for out-of-state waste, is also misplaced. There, the court found that the statute did not have a discriminatory impact on interstate commerce because there was no evidence "that [the] state law treats in-state economic interests differently than out-of-state economic interests..." 127 F.3d at 544. Here, however, by showing that the Amendments will affect only those waste generators located outside of Michigan, Plaintiffs have demonstrated that the Amendments treat in-state economic interests differently than out-of-state interests.

### iii. Purposeful Discrimination

Since the Court concludes that the Amendments are discriminatory in effect, it need not determine whether they were enacted with a discriminatory purpose. However, because Plaintiffs have submitted ample evidence that the Amendments purposefully discriminate against out-of-state waste, the Court will briefly discuss this issue.

A party challenging the constitutionality of a state law under the Commerce Clause can establish purposeful discrimination in one of two ways. It can either introduce "[t]he state's own self-serving statement of its legislative intent[,]" or, in the absence of such self-serving statements, submit any other evidence that "indicate[s] the presence of actual and discriminatory purposes." *E. Ky. Res.,* 127 F.3d at 542. Here, the preamble to the Amendments provides that its purpose is "to conserve landfill space, contain disposal costs, and encourage the recycling of plastic and glass containers," and contains no self-serving statements of discriminatory legislative intent. Nevertheless, Plaintiffs present three public statements made by the Wayne County Department of Environment and Ficano that suggest that De-

fendants enacted the Amendments to exclude Canadian waste from Wayne County. First, Plaintiffs submit a statement from the Wayne County Department of Environment's website, which provides:

With the recent events surrounding the transference of Toronto, Ontario's refuse into Wayne County landfills, the Wayne County Department of Environment is closely monitoring the ongoing developments. The Department of Environment is responsible for coordination and planning of the County's solid waste disposal needs. Wayne County Executive Robert Ficano is opposed to Canadian waste coming into Wayne County and the State of Michigan. Mr. Ficano has publicly stated: "We are committed in Wayne County to making sure the trash coming from across the border isn't dumped into our county. We want to stop the trash from coming from Canada onto our land. This is not just a Wayne County problem. It is a regional issue." (Pls.' Br., Ex. 4).

Second, a short article entitled "Michigan: Canada's Dumping Ground" in the Winter, 2003 edition of the Wayne County Department of Environment News, includes the following statement:

Wayne County is opposed to having trash from Canada dumped in our landfills. Wayne County Executive, Robert A. Ficano, has formed a task force to look into our landfills. The basic goals of the task force are as follows: investigate the possibility of enacting a county ordinance prohibiting the disposal of returnable bottles (Michigan Bottle Bill containers) thereby restricting their entry into the country... (Pls.' Reply Br., Ex. 16).

Third, Plaintiffs offer an August 18, 2003 article from the Detroit News, which contains the following quote from Ficano:

I believe the [Amendments] would perhaps get Ontario's attention and others

who don't have the recycling standards we do. It is cost-effective for them to keep their own trash. We did not want to be the trash capital of the Midwest or the United States. (Pls.' Reply Br., Ex. 17).

Given these statements, the Court is persuaded that Defendants designed the Amendments, in large part, to keep Canadian trash out of Wayne County, and, correspondingly, to conserve landfill space for Michigan waste. Such purposes are prohibited by the Commerce Clause. *C & A Carbone*, 511 U.S. at 390, 114 S.Ct. 1677 (holding that "local laws that impose commercial barriers or discriminate against an article of commerce by reason of its origin or destination out of State" are invalid); *see also City of Philadelphia*, 437 U.S. at 627, 98 S.Ct. 2531 ("a State may not accord its own inhabitants a preferred right of access over consumers in other States to natural resources located within its borders") (citations omitted).

Defendants argue that Ficano's statements are irrelevant to a finding of purposeful discrimination because he did not sign the Amendments into law. The Court acknowledges that it was Wayne County's legislative body, the Wayne County Commission, and not Ficano, that passed the Amendments. However, there can be little doubt that Ficano was significantly involved in the drafting and passing of this law. Indeed, it is Defendants who state in their Response to Plaintiffs' Motion for Declaratory and Injunctive Relief that Ficano, as Wayne County Executive, was partly responsible for introducing the Amendments to the Wayne County Commission. Therefore, his public statements on behalf of Wayne County are relevant to a finding of discriminatory purpose. The Court makes no conclusive ruling on this issue, however, since its finding of discrim-

inatory effect suffices to trigger strict scrutiny under the Commerce Clause.

## B. The Amendments Are Invalid

Because the Amendments discriminate against interstate and foreign commerce, they are *per se* invalid. *C & A Carbone*, 511 U.S. at 392, 114 S.Ct. 1677; *Natsios*, 181 F.3d at 67. To overcome this presumption of invalidity, Defendants bear the burden of showing that "the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism." *Wyoming v. Oklahoma*, 502 U.S. 437, 454, 112 S.Ct. 789, 117 L.Ed.2d 1 (1992) (citation omitted). The burden upon Defendants is a heavy one, and heavier still with respect to Plaintiffs' foreign Commerce Clause challenge, as a discriminatory law will be deemed valid only "in a narrow class of cases in which the municipality can demonstrate, under rigorous scrutiny, that it has no other means to advance a legitimate local interest." *C & A Carbone*, 511 U.S. at 392, 114 S.Ct. 1677 (citation omitted).

Defendants argue that the Amendments withstand rigorous scrutiny because they are the sole means by which the county can advance its legitimate objectives of landfill preservation and the promotion of recycling. According to Defendants, unrecycled beverage container waste unnecessarily occupies landfill space, contributes to litter, and leads to the application of virgin materials and crude oil in the production of new beverage containers. Defendants maintain that the only way to protect their resources is through the enactment of beverage container deposit legislation.

The Court does not deny the importance of the local interests asserted by Defendants. *City of Philadelphia*, 437 U.S. at 625, 98 S.Ct. 2531 (recognizing as valid the state's interests in reducing waste disposal costs and saving remaining open lands from pollution). However, "when legislating in areas of legitimate local concern, such as environmental protection and resource conservation, [localities] are nonetheless limited by the Commerce Clause." *Clover Leaf Creamery Co.*, 449 U.S. at 471, 101 S.Ct. 715. Therefore, to survive strict scrutiny, Defendants cannot rest upon the mere assertion of a legitimate purpose. They must explain why they are required to treat in-state commerce differently than out-of-state commerce in order to achieve that purpose. The Court will scrutinize Defendants' claimed goals carefully, bearing in mind that "the evil of protectionism can reside in legislative means as well as legislative ends." *City of Philadelphia*, 437 U.S. at 626, 98 S.Ct. 2531.

The Supreme Court has made clear that a state or locality cannot treat in-state waste differently than out-of-state waste simply to preserve landfill space. In *City of Philadelphia*, the Court held that "a State may not accord its own inhabitants a preferred right of access over consumers in other States to natural resources located within its borders." 437 U.S. at 627, 98 S.Ct. 2531; *see also Chem. Waste Mgmt.*, 504 U.S. at 339–40, 112 S.Ct. 2009 ("[n]o State may attempt to isolate itself from a problem common to the several States by raising barriers to the free flow of interstate trade"); *Or. Waste Sys.*, 511 U.S. at 107, 114 S.Ct. 1345 (finding that a discriminatory law that sought to advance goals of conservation was unconstitutional no matter how "serious the shortage in landfill space may be"). Therefore, a state or locality seeking to conserve landfill space can create a uniform regulation that "slows the flow of *all* waste entering into the State's remaining landfills[,]" but it cannot accomplish that goal by "discriminating against articles of commerce coming from outside the State unless there is some reason, apart from their origin, to treat them differently." *City of Philadelphia*,

437 U.S. at 626–27, 98 S.Ct. 2531. Here, Defendants cannot achieve their goal of landfill preservation by enacting parochial legislation that discriminates against interstate commerce. If the Amendments are to pass constitutional muster, Defendants must justify them on other grounds.

Defendants attempt to justify the Amendments based on the fact that they promote recycling. In a very broad sense, Defendants are correct that the Amendments will meet this objective. By obstructing the entry of out-of-state waste into Wayne County, the Amendments force other jurisdictions to adopt Michigan's recycling standards. However, notwithstanding the fact that the Commerce Clause prohibits this kind of extraterritorial effect, Defendants neglect to explain why they cannot achieve their goal without discriminating against interstate and foreign commerce. For example, they do not support their position that the Amendments are necessary with evidence that out-of-state waste generators are less successful at recycling than Michigan. In fact, as Plaintiffs submit, the record reflects that some non-Michigan jurisdictions, namely Canada, maintain a recycling and waste diversion program that parallels, if not exceeds, Michigan's.

Likewise, Defendants do not identify any of the alternative, nondiscriminatory, measures considered and rejected by the Wayne County Commission prior to the passing of the Amendments. Without such evidence, Defendants fail to support their assertion that the Amendments constitute the *only way* by which Defendants can achieve their goal. *C & A Carbone*, 511 U.S. at 393, 114 S.Ct. 1677 (discriminatory waste regulation invalid where defendant did not consider a number of nondiscriminatory alternatives, including "uniform...regulations enacted without the object to discriminate"); *Fort Gratiot*, 504 U.S. at 367, 112 S.Ct. 2019 (finding that state could achieve its conservation goal without discriminating between in-state and out-of-state waste, such as by limiting the amount of waste accepted by landfill operators per year).[4] Therefore, the Amendments do not withstand the Court's strict scrutiny under the domestic Commerce Clause, or its heightened level of strict scrutiny under the foreign Commerce Clause. Consequently, the Amendments do not meet constitutional standards.

## V. CONCLUSION

For the reasons stated above, the Court declares Section 141.1 through Section 141.3 of the Wayne County Amendments unconstitutional. The Court hereby GRANTS Plaintiffs' Motion for Declaratory Judgment and DENIES Defendants' Motion for Declaratory Judgment and Summary Judgment.

IT IS SO ORDERED.

---

**4.** Perhaps the outcome of this case would be different if Defendants could show that out-of-state waste was more hazardous or dangerous that waste generated within the state. The Supreme Court has acknowledged that a discriminatory local law might survive strict scrutiny if it protects the health of local citizens from dangerous out-of-state waste. *Fort Gratiot*, 504 U.S. at 367, 112 S.Ct. 2019. However, Defendants make no such argument here, and the record contains no evidence suggesting that non-Michigan waste poses a unique health threat to Michigan residents. *Chem. Waste Mgmt.*, 504 U.S. at 343–44, 112 S.Ct. 2009 (waste regulation invalid where "there is absolutely no evidence...that waste generated outside Alabama is more dangerous than waste generated in Alabama").